**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 10-1813**

———————

EARNEST PARISH, III,

　　　　　Plaintiff - Appellant,

　　　v.

SIEMENS MEDICAL SOLUTIONS USA, INCORPORATED,

　　　　　Defendant - Appellee.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.　W. Earl Britt, Senior District Judge.　(5:08-cv-00622-BR)

———————

Submitted:　April 14, 2011　　　　　Decided:　May 9, 2011

———————

Before NIEMEYER and MOTZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

Angela Newell Gray, Greensboro, North Carolina, for Appellant. Patricia L. Holland, Nicola A.L. Prall, JACKSON LEWIS LLP, Cary, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Earnest Parish appeals the district court's grant of summary judgment to Appellee Siemens Medical Solutions USA ("Siemens") on Parish's racial discrimination, retaliation, and disparate treatment claims. We affirm.

Parish, an African-American, was hired by Siemens in 1998, and by 2004, had been promoted to the level of Call Center Supervisor. He was promoted by Operations Manager Freda Kuhfahl, and on her retirement she was replaced by Chloe Mazuroski. Prior to retiring, Kuhfahl prepared a 2004-2005 performance evaluation for Parish, indicating performance deficiencies in a number of areas. Within a few months of assuming the position of Operations Manager, Mazuroski placed Parish on a Performance Improvement Plan ("PIP") in order to address several complaints from other supervisors and from Parish's subordinates, and remedy what she saw as continuing performance issues.

In the course of the PIP, Parish requested that his staff be able to meet with a representative from Human Resources ("HR"), without him present, in order to raise whatever concerns they might have about his management. Parish's subordinates met with Kelly Walsh, a human resources ("HR") Business Partner, and they verbally shared their concerns with her regarding Parish's management technique and ability. During meetings with Walsh,

2

members of Parish's staff indicated that they did not feel that he gave them appropriate recognition, that his training was "horrendous," that he held them to "ridiculous expectations," that they were not treated fairly by Parish, and that he was "hard to trust" because he did not follow through with communications. Walsh reported these findings to Parish and to Siemens.

While he was on the PIP, Parish complained of discrimination to HR representatives at Siemens. He stated that she only singled out African-American employees for harsh treatment. Other African-American employees echoed Parish's concerns about Mazuroski.

In light of Parish's continued performance issues despite the PIP, Mazuroski informed Parish that he could either accept a demotion, or he would have thirty days to resolve the issues or face termination. Parish chose to accept a demotion rather than face termination. In addition, while he was on the PIP, Parish applied for another position at Siemens, but was not selected. The position was filled by a Caucasian woman.

Parish ultimately brought suit against Siemens in the district court. He claimed that Siemens violated Title VII, 42 U.S.C.A. §§ 2000e-2000e-17 (West 2003 & Supp. 2010), and 42 U.S.C. § 1981 (2006). He alleged discrimination, retaliation, and disparate treatment. Siemens moved for summary judgment,

3

and the district court granted the motion.  The court concluded that Parish was not performing his job at a satisfactory level and thus could not sustain a discrimination claim.  The court also concluded that there was no basis for a retaliation claim because Parish had shown no causal relationship between his protected activity and the decision not to hire him for the other position.  Finally, with respect to Parish's claim of disparate treatment, the court concluded that Parish had adduced no evidence in support of the claim.  This appeal followed.

This court reviews a district court's order granting summary judgment de novo.  Jennings v. Univ. of N.C., 482 F.3d 686, 694 (4th Cir. 2007) (en banc).  "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Scott, 550 U.S. at 380 ("Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'")

Absent direct evidence of intentional discrimination, Title VII and § 1981 claims are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973). See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 n.7 (4th Cir. 2002) (recognizing that the elements of a discrimination claim are the same under both Title VII and § 1981). Under McDonnell Douglas, once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for the employment decision. If the defendant meets this burden, the onus returns to the plaintiff to demonstrate that the reason is pretextual and that discrimination was the motivating force behind the decision. McDonnell Douglass, 411 U.S. at 802-04.

To establish a prima facie case of discrimination, Parish had to prove:

> (1) [he] is a member of a protected class; (2) [he] suffered adverse employment action; (3) [he] was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc).

5

We conclude that the district court did not err in concluding that Parish failed to make a prima facie showing of discrimination. While Parish is a member of a protected class, and did suffer an adverse employment action, he was not performing his duties at a level that met Siemens's legitimate expectations. The record is replete with examples of management dissatisfaction with Parish's performance. Kuhfahl, Mazuroski, and Walsh received frequent and harsh complaints from Parish's subordinates, his colleagues, and other groups in the organization. Mazuroski offered specific performance improvement guidelines, and Parish was simply unsuccessful at improving his performance to a level that met his employer's expectations. Under these facts, we see no error in the district court's grant of summary judgment in favor of Siemens.

Parish argues that he was meeting his employer's expectations, and offers statements from one of his subordinates and a fellow supervisor in support of his claim. As the district court noted, however, this evidence is not relevant to the question of whether, from the perspective of the employer, Parish was adequately performing his job duties. See Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007) ("it is the perception of the decisionmaker which is relevant").

Because Parish has not made out a prima facie case, we affirm the judgment of the district court. We dispense with

oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED